(No. 2082— ▮▮▮▮▮▮▮▮▮

JOE WHITE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 14, 1934.*

ELDON L. McLAUGHLIN, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Claimant filed his claim in the nature of a common law action on March 7, 1933 claiming One Thousand Three Hundred Twelve Dollars and Forty Cents ($1,312.40) by reason of an accident that occurred on November 17, 1932, while the claimant was engaged in the operation of a snow plow on State Aid Route No. 7, near Sidell, Illinois. The plow had proceeded over two railroad tracks and had crossed a bridge at the north edge of Sidell. About two blocks farther on and north of the C. & E. I. tracks, the plow caught a man-hole and threw claimant off.

It abundantly appears from the record that the claimant did receive an injury arising out of and in the course of his employment and that his superior officer had notice on the same day of the accident.

Dr. M. L. Hole, at Danville, Illinois, was called and testified that claimant had a contusion of the scalp, an abrasion across the left popliteal space; a strain of the posterior liga-

148

ments of the left knee; that the doctor had treated the claimant for those injuries continuously from that time, and was the only physician on that case. He further testified that claimant was still having trouble with the knee, and that there was some swelling with a loss of motion, and the doctor gave as his opinion that the posterior ligaments of the knee were pulled. X-ray pictures would be of little or no help in determining the extent of the injury. The doctor was asked, if in his opinion there would be a permanent disability, and he answered to the effect that there would be; that the disability would be to the left knee. He was then asked: "How much about, in your opinion would be the permanent loss of use of the left knee as a result of this injury?" There was an objection, and he answered: "I would say about fifty per cent of the use of his knee." We are forced to sustain this objection. It is for the court to determine the extent of an injury after being fully advised of all the facts and circumstances, and under the decisions, this kind of testimony is incompetent.

Outside of the testimony of the doctor, there is practically no evidence to aid the court in ascertaining the extent of this injury, and the amount of temporary total disability. It is, however, virtually conceded by the Attorney General that the claimant is entitled to Ten Dollars and Eighty Cents ($10.80) per week for eight weeks during temporary total disability, or the sum of Eighty-six Dollars and Forty Cents ($86.40); also the further sum of Ten Dollars and Eighty Cents ($10.80) per week for ninety-five weeks, or the sum of One Thousand Twenty-six Dollars ($1,026.00) for fifty per cent loss of the use of claimant's left leg.

Claimant was fifty-seven years of age at the time of the accident; married, but no children.

It appears from a letter dated March 31, 1933, written by Fred Tarrant, State Highway Engineer of Maintenance, that the claimant in this case did receive an injury arising out of and in the course of his employment; that he was carried on the payroll for one-half time from November 17 to January 7, and was paid a total amount of Seventy-nine Dollars and Eighty Cents ($79.80), but no doctor bills were paid.

Claimant was not taken to a hospital, and is not claiming any hospital bill or nurses bill. He did receive a severe injury.

The Attorney General probably reaches the figure eight weeks temporary total disability from the cross-examination of Mr. White, the claimant. He was asked: "How long after the accident was it before you could get around?" and he answered to the effect that it was in the neighborhood of about seven weeks.

It is the general rule of law, applicable to cases of this kind, as well as others, that the burden is upon the applicant to prove by the greater weight of the evidence, the injury complained of.

In the case of *Mt. Olive and Staunton Coal Co.* vs. *Industrial Commission*, 301 Ill. 521, it was held that it is not enough for the defendant in error to show that he did not work. It must also appear that he was not able to work.

The period of temporary total disability has been defined by our Supreme Court as the period of the healing process. Temporary, as distinguished from permanent disability is a condition that exists until an injured workman is as far restored as the permanent character of the injuries will permit. It has also been said that the period of temporary total incapacity is that period immediately after the accident during which the injured employee is totally incapacitated for work by the reason of illness attending the injury. It might be described as the period of healing process.

The claimant having the burden to prove the extent of the temporary disability and having failed to do so, we must accept the Attorney General's conclusions, that this disability only covered a period of eight weeks.

Under the Compensation Act, the employer is liable for medical, surgical and hospital services to the employee, and under the provisions of Paragraph (a) of Section 8 there is no limitation of time or amount of the medical, surgical and hospital services which the employer is required to furnish and they are limited only to that which is reasonably required to cure or relieve from the effects of the injury.

Dr. Hole testified that his services were reasonably worth the sum of Two Hundred Two Dollars ($202.00), and he filed an itemized statement which was introduced in evidence as claimant's exhibit. 1. It consisted of one item of Five Dollars ($5.00) for first aid. He made eight calls upon the claimant in November, 1932, eleven calls in December, and two calls in the following January, making a total of

twenty-one calls. It is not contended that any bones were broken, or any serious lacerations. The doctor also filed a claim for ten physiotherapy treatments in January; eleven in February; fourteen in March; thirteen in April; twelve in May and seven in June at Two Dollars ($2.00) apiece. Considering the nature of the injury, the slow process that nature requires to heal such an injury; further considering all that might be done by human agencies in cases of this kind, the testimony of the doctor is conclusive to the effect that the claimant received ample surgical attention. After the testimony was taken in this case, the doctor filed an affidavit increasing his bill to the sum of Two Hundred Sixty-eight Dollars ($268.00). It appears that at the time the testimony was taken, Dr. Hole had done all that he could for claimant. We, therefore, cannot allow the extra claim for medical services rendered after the hearing, and upon which the Attorney General had no opportunity to cross examine Dr. Hole.

We, therefore, recommend to the legislature that an appropriation be made in this case to the claimant for eight weeks temporary total disability at Ten Dollars and Eighty Cents ($10.80) per week, less the sum of Seventy-nine Dollars and Eighty Cents ($79.80) paid to the claimant, and in addition to that, the sum of One Thousand Twenty-six Dollars ($1,026.00) for fifty per cent (50%) loss of the use of the left leg, the same being for ninety-five (95) weeks at Ten Dollars and Eighty Cents ($10.80) per week, and the further sum of Two Hundred Two Dollars ($202.00) for medical care and attention, or a total sum of One Thousand Two Hundred Thirty-four Dollars and Sixty Cents ($1,234.60).